**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| **CHINN, THRASHER, & THRASHER FARM PARTNERSHIP,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Case No. 2:24-CV-0055 PLC** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** ) ) ) ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant United States Department of Agriculture's ("Agency" or "USDA") motion for summary judgment. [ECF No. 24] Plaintiff Chinn, Thrasher, & Thrasher Farm Partnership ("CT&T") filed this action seeking judicial review of the Agency's decision denying CT&T's December 2020 application for payments as a producer under the Coronavirus Food Assistance Program 2 ("CFAP 2"). [ECF No. 1]

The Agency asserts it is entitled to summary judgment because its determination that CT&T was not in the business of farming at the time of the application and, therefore, is not entitled to benefits under the program, is neither arbitrary nor capricious. [ECF No. 24] CT&T counters material issues of fact exist regarding whether it was in the business of livestock farming at the time of its application, precluding entry of summary judgment. [ECF No. 37]

I.      **Background**

Dwayne Thrasher, Carrie Thrasher, and Kathy Stidham were partners in CT&T and registered CT&T as a fictitious name with the Missouri Secretary of State. [ECF No. 26 & 38, ¶ 1; 26-1] On April 2, 2020, Macon-Atlanta State Bank ("Macon-Atlanta") filed a petition ("Petition")

1

in the Circuit Court of Macon County, Missouri naming CT&T and others as defendants. *See Macon-Atlanta State Bank v. Thrasher et al.*, Case No. 20MA-CC00020 (Macon County, Missouri). [ECF Nos. 26 & 38, ¶ 4; 26-4] In the Petition, Macon-Atlanta alleged CT&T ran animal feeding operations for swine farrowing on two premises, that the defendants had defaulted on various loans made to them by Macon-Atlanta, and that the swine and other property on the two premises were collateral for the loans. [ECF Nos. 26 & 38, ¶¶ 5-8; 26-4] Macon-Atlanta sought appointment of a receiver to "manager and preserve the swine." [ECF Nos. 26 & 38, ¶¶ 9-10; 26-4, 26-5]

On April 13, 2020, the state court appointed Brent King ("Receiver") to serve as receiver for CT&T. [ECF Nos. 26 & 38, ¶¶ 11; 26-6] The receivership order permitted the Receiver to "use, sell, or lease Receivership Property[,]" which entailed the borrowers' personal property, including the swine. [ECF Nos. 26 & 38, ¶¶ 12-14; 26-6] In May 2020, the state court authorized the Receiver to liquidate most of the receivership estate's equipment. [ECF Nos. 26 & 38, ¶ 15; 26-7] On June 9, 2020, the state court entered an order authorizing the Receiver to liquidate CT&T's remaining swine and directing the Receiver to "immediately sell all Swine at a market price within the sole discretion of the Receiver."[1]    [ECF Nos. 26 & 38, ¶¶ 16-17; 26-8]

The Receiver sold all swine owed by CT&T by early July 2020. [ECF No. 26 & 38, ¶¶ 18; Ex. I at 296, 311-327] By late August 2020, the Receiver rejected CT&T's land leases and returned the land to their respective owners. [ECF No. 26 & 38, ¶¶ 19; Ex. I at 296, 473-484]

On September 25, 2020, the Receiver applied to the USDA's Farm Service Agency ("FSA") for payment under CFAP 2, identifying swine as the commodity for which CT&T was seeking benefits.[2] [ECF Nos. 26 & 38, ¶¶ 20-21; Ex. I at 303, 266-67] On October 9, 2020, an FSA

---

[1] The order directed the Receiver to remove the swine from the leased premises on or before June 30, 2020, or such date as soon thereafter as reasonably possible. [ECF No. 26-8]

[2] Livestock producers could seek assistance under CFAP 2 related to livestock inventory held between April 16, 2020 and August 31, 2020. 7 C.F.R. § 9.1(a).

representative emailed the Receiver inquiring if CT&T owned any swine and advising the Receiver that CT&T would be ineligible for benefits if it was no longer engaged in farming for the commodity for which it was applying. [ECF Nos. 26 & 38, ¶¶ 22-23; Ex. I at 303, 485]

On November 5, 2020, Macon-Atlanta informed the Receiver that it would not fund the acquisition of new swine by CT&T. [ECF Nos. 26 & 38, ¶ 34; Ex. I at 304] The next day, the Receiver informed the FSA that CT&T "owns no livestock and has been closed." [ECF Nos. 26 & 38, ¶ 26; Ex. I at 304, 486]

Later that month, the Receiver called FSA's CFAP 2 hotline to determine if a liquidated swine herd could qualify for CFAP 2 payments.  [ECF Nos. 26 & 38, ¶ 28; Ex. I at 305] On November 20, 2020, an FSA employee advised the Receiver that eligibility for CFAP 2 required the applicant to be in the business of farming at the time of application and, as such, CT&T did not qualify for CFAP 2 payments. [ECF Nos. 26 & 38, ¶ 29; Ex. I at 305, 487] Several days later, on November 24, 2020, the USDA's County Executive Director in Shelby County again confirmed to the Receiver that CT&T did not qualify for the CFAP 2 program. [ECF Nos. 26 & 38, ¶ 30; Ex. I at 307]

On November 27, 2020, Dwayne Thrasher and Jeff Golay executed a document titled "CT&T Hear Purchase from Jeff Golay" for the purchase of 130 "replacement" gilts, 30 feeder pigs, 1 breeding herd boar, and approximately two tons of feed. [ECF Nos. 26 & 38, ¶ 25; Ex. I at 329] The contract set out payment terms for the $28,000 purchase price and established the cost for "[m]onthly rent of facilities[.]" [Ex. I at 329] Dwayne Thrasher signed the document on behalf of CT&T. [Ex. I at 329]

Nemo Feed, LLC issued invoices to Dwayne Thrasher for feed purchases between November 30, 2020, and March 28, 2021. [ECF Nos. 26 & 38, ¶ 49; Ex. I at 330-343] Darin and Cheri Yoakum issued checks payable to Dwayne Thrasher between January 27, 2021 through

March 28, 2021, as payment for the purchase of swine.  [ECF Nos. 26 & 38, ¶ 49; Ex. I at 330-343] Passion for Pigs Veterinary Service issued invoices for veterinary services, dated November 20, 2020 and December 1, 2020, listing CT&T as the customer.   [ECF Nos. 26 & 38, ¶ 48; Ex. I at 413-414]

On November 29, 2020, Dwayne Thrasher filed a petition pursuant to Chapter 12 of the United States Bankruptcy Code on behalf of CT&T in the United States Bankruptcy Court for the Eastern District of Missouri. *See In re Chinn, Thrasher & Thrasher Farm Partnership,* Case No. 20-20249 (E.D. Mo. Bankr.).   [ECF Nos. 26 & 38, ¶¶ 31; Ex. I at 355-407] In the Chapter 12 petition, Dwayne Thrasher stated CT&T did not lease or own any real property or own any farm animals. [ECF Nos. 26 & 38, ¶¶ 32-33; Ex. I at 368, 371]

On December 11, 2020, Dwayne Thrasher, on behalf of CT&T, filed an application with the USDA's FSA for CFAP 2 benefits. [ECF Nos. 26 & 38, ¶¶ 34; Ex. I at 264-265] In its statement of uncontroverted material facts, the Agency alleged that, as of December 11, 2020, CT&T's only remaining assets were seven pieces of miscellaneous equipment, and that it owned no swine and did not own or lease any land. [ECF No. 26 ¶¶ 35-36; Ex. I at 301, 309] CT&T denied these allegations in its response to the Agency's Statement of Uncontroverted Material Facts, asserting that on December 11, 2020, "CT&T was a debtor in an active Chapter 12 bankruptcy and had contracted to acquire new swine." [ECF No. 38, ¶¶ 35-36; Ex. I at 329, 355-410]

On December 21, 2020, the Shelby County FSA Committee denied the CFAP 2 applications filed by the Receiver and Dwayne Thrasher on behalf of CT&T, on the basis that CT&T was not a producer under the regulations because it was not in the business of farming at the time of the applications.   [ECF Nos. 26 & 38, ¶ 37; Ex. I at 5, 230-237, 265, 267] CT&T requested reconsideration, which the Shelby County FSA Committee denied. [ECF Nos. 26 & 38, ¶ 40; Ex. I at 238-239]

4

On January 8, 2021, the Bankruptcy Court entered a stipulated order dismissing the Chapter 12 Bankruptcy proceeding. [ECF Nos. 26 & 38, ¶ 38; Ex. I at 281] As part of the dismissal, the bankruptcy court permitted Dwayne Thrasher to pursue administrative appeals of the denial of the CFAP 2 application he filed on CT&T's behalf. [ECF No. 26 & 38, ¶ 39, Ex. I at 281].

CT&T appealed the Shelby County Committee's denial of benefits to the Missouri State FSA Committee, which concurred with the County Committee's determination that CT&T's CFAP 2 applications must be denied because CT&T was not in the business of farming at the time of its applications. [ECF Nos. 26 & 38, ¶¶ 41-42; Ex. I at 7-9, 219-229] CT&T appealed to the USDA's National Appeals Division ("NAD") with respect to Dwayne Thrasher's December 11, 2020 application.[3] [ECF Nos. 26 & 38, ¶¶ 43; Ex. I at 15-23, 58]

The NAD Hearing Officer ("Hearing Officer") conducted hearings in August and November 2021. [Ex. I at 58] The Hearing Officer found CT&T was under a judicial receivership between April 2020 through January 31, 2021, during which time the Receiver sold CT&T's farm equipment and swine, and ended CT&T's leases. [Ex. I at 62] The Hearing Officer further found that the Receiver had ceased CT&T's swine operation by July 2020. [Ex. I at 62] The Hearing Officer concluded CT&T was not in the business of farming when the CFAP 2 application was filed in December 2020 because CT&T was under a judicial receivership at that time. [Ex. I at 62]

CT&T sought NAD Director Review of the Hearing Officer's decision asserting she "failed to consider the legal affect of CT&T's Chapter 12 bankruptcy upon the state judicial receivership." [ECF Nos. 26 & 38, ¶¶ 45; Ex. I at 70] On review, the Director upheld the Hearing Officer's decision, concluding CT&T was not in the business of farming at time of the CFAP 2 application. [ECF Nos. 26 & 38, ¶¶ 46; Ex. I at 96-105]

---

[3] The request for appeal asserts the State Committee erred in denying the application by "considering evidence given by [the Receiver] in a competing CFAP application." [Ex. I at 15]

The Director found the Hearing Officer fully considered Dwayne Thrasher's contention that CT&T had resumed swine operations on November 27, 2020, including his assertion that he advanced money to CT&T to purchase the swine on that date and for feed at various times through March 22, 2021. [Ex. I at 101] The Director found no evidence in the record that CT&T reimbursed Dwayne Thrasher for these alleged advances, despite Thrasher's assertion that he would provide records demonstrating such. [Ex. I at 101] The Director concluded the Hearing Officer's determination that CT&T was no longer in the business of swine farming during the CFAP 2 program application period was supported by substantial evidence, stating:

> In the absence of any evidence that [CT&T], as opposed to [Dwayne Thrasher], resumed swine operations on November 27, 2020, the [Hearing Officer] properly concluded that [the Receiver], having sold [CT&T's] farm equipment, ended [CT&T's] leases, sold [CT&T's] swine, and closed [CT&T's] facilities by July 2020, terminated [CT&T's] swine operation, and the operation remained terminated throughout the CFAP 2 program application period.

[Ex. I at 101-102] The Director also rejected CT&T's argument that the mere filing of a Chapter 12 bankruptcy petition resulted in CT&T acquiring the status of a "family farmer" conducting "farming operations" which operated independently of the Receiver. [ECF Nos. 26 & 38, ¶¶ 47; Ex. 102-104] Specifically, the Director found no evidence in the record supporting the conclusion that CT&T established in the Bankruptcy Court that it was a "family farmer" conducting "farming operations" under the Bankruptcy Code.   [Ex. I at 104]

## II.    Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322 (1986). The substantive law determines "which facts are material." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.*

### III.    The Administrative Procedures Act

The Administrative Procedures Act ("APA") provides for judicial review of a final agency decision. 5 U.S.C. §704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").   The APA requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be - (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] (E) unsupported by substantial evidence…reviewed on the record of an agency hearing provided by statute…." 5 U.S.C. §§ 706(2)(A), (E).

"Judicial review of agency policymaking and factfinding are deferential." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (citing arbitrary, capricious, and abuse of discretion standard for agency actions under Section 706(2)(A) and substantial evidence standard for agency factfinding under Section 706(2)(E)).[4] Thus, "[w]hile judicial review of an agency's statutory interpretation is generally de novo, 'when an agency exercises discretion ..., judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard.'" *Zimmer Radio of Mid-Missouri, Inc.*, 145 F.4th at 846–47 (regarding an agency's discretion to define a term within a statute) (quoting *Seven Cnty. Infrastructure Coalition*

---

[4] However, under the APA, courts "exercise independent judgment in determining the meaning of statutory provisions[.]" *Loper Bright Enterprises*, 603 U.S. at 394. "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "need not ... defer to an agency interpretation of the law." *Zimmer Radio of Mid-Missouri, Inc. v. Federal Communications Commission*, 145 F.4th 828, 843 (8th 2025) (quoting *Loper Bright*, 603 U.S. 369, 412-13).

*v. Eagle County, Colorado,* 145 S. Ct. 168, 179-180 (2025)). Under the arbitrary and capricious

standard, the agency's action must

> be reasonable and reasonably explained. Judicial review under that standard is
> deferential, and a court may not substitute its own policy judgment for that of the
> agency. A court simply ensures that the agency has acted within a zone of
> reasonableness and, in particular, has reasonably considered the relevant issues and
> reasonably explained the decision.

*Zimmer Radio of Mid-Missouri,* 145 F.4th at 847 (quoting *FCC v. Prometheus Radio Project*, 592

U.S. 414, 423 (2021)). An arbitrary and capricious agency action includes: (1) relying on factors

not intended by Congress, (2) "entirely fail[ing] to consider an important aspect of the problem,"

(3) offering an explanation for its decision that is counter to the evidence, or (4) offering an

explanation that "is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise." *Id.* at 846-47 (quoting *Citizens Telecommunications Company of Minnesota,*

*LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*

*v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**IV.    Discussion**

The Agency argues it is entitled to summary judgment because its determination that CT&T

was not entitled to benefits as a "producer" under CFAP 2 was not arbitrary and capricious. [ECF

No. 25] Specifically, the Agency asserts its finding that CT&T was not in the business of farming

at the time of the application is within the zone of reasonableness, in that the record establishes that

the court-appointed Receiver had sold all of CT&T's swine, terminated CT&T's leaseholds, and

liquidated almost all of CT&T's personal property months prior to Dwayne Thrasher's CFAP 2

application. [ECF No. 25] The Agency further contends its determination that Dwayne Thrasher's

act of filing a Chapter 12 bankruptcy action on CT&T's behalf did not convert CT&T into a farming

operation was not arbitrary and capricious. [ECF No. 25]

CT&T counters that summary judgment is precluded by the presence of material issues of fact respecting whether it was in the business of livestock farming at the time of the application. [ECF No. 37] Specifically, CT&T asserts that the "CFAP application, the CT&T Herd Purchase Agreement, and veterinary bills" it submitted as evidence "demonstrate a clear material issue of fact as to whether or not CT&T was in the business of livestock farming at the time of the relevant CFAP application." [ECF No. 37]

"The CFAP program was created in response to hardship faced by agricultural growers and producers during the Coronavirus Pandemic." *Daniels Ranch, LLC v. Farm Services Agency of USDA*, 1:22-CV-3099-TOR, 2023 WL 6133174, at * 1 (E.D. Wash Sept. 19, 2023). CFAP was funded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, passed in March 2020, in which Congress appropriated additional funds and empowered the Secretary of Agriculture to use those funds to "support…agricultural producers impacted by coronavirus, including producers of specialty crops, producers that supply local food systems, including farmers markets, restaurants, and schools, and livestock producers, including dairy producers[.]" 85 FR 30825-01, Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, Division B, Title I.

The FSA administered the CFAP program and provided "payments with respect to commodities that have been significantly impacted by the effects of the COVID-19 outbreak." 7 C.F.R. § 9.1(a).  The program consisted of two rounds of payments, CFAP 1 and CFAP 2.  7 C.F.R. § 9.1(a).  Under CFAP 2, livestock producers could seek assistance for livestock inventory held between April 16, 2020 and August 31, 2020.  7 C.F.R. § 9.1(a). To receive funding, growers or producers applied to the FSA and were required to meet certain eligibility conditions. 7 C.F.R. §§ 9.3, 9.4, 9.202.

The regulations define a "producer" as "a person or legal entity who shares in the risk of producing a commodity. Except for contract producers, producers who are not in the business of farming at the time of application are not considered eligible producers."   7 C.F.R.  §  9.201. "Commodity means an agricultural commodity produced in the United States and intended to be marketed for commercial production that has been designated as eligible for payments under CFAP." 7 C.F.R. § 9.2.

Contrary to CT&T's assertions, there are no genuine issues of material fact precluding entry of summary judgment. In response to the Agency's motion for summary judgment, CT&T disputes three of the forty-nine facts alleged by the Agency. Specifically, CT&T contests the Agency's assertion that Dwayne Thrasher, and not CT&T, purchased the swine from Jeff Golay on November 27, 2020, stating "the document clearly is denominated as the 'CT&T Herd Purchase,' and Dwayne Thrasher executed the document on behalf of CT&T as noted on the signature line." [ECF No. 38] CT&T also disputes the Agency's allegation that CT&T owned no swine at the time of the December 2020 CFAP 2 application, asserting "CT&T was a debtor in an active Chapter 12 bankruptcy and had a contract to acquire new swine" at that time. [ECF No. 38]

CT&T's position is that, beginning in November 2020, Dwayne Thrasher entered into a contract to purchase swine and lease facilities, purchased feed, secured veterinary services, and sold swine all on CT&T's behalf, as evidenced solely by his act of signing CT&T's name. CT&T, however, has not presented any authority supporting its assertion that Dwayne Thrasher was authorized to perform these actions.

CT&T does not contest that it was under a judicially-created receivership from April 13, 2020 through January 31, 2021. Under the receivership order, the Receiver took "over the affairs" of CT&T "with respect to the Receivership Property" which included all personal property, real property, the leased premises, and "assets" and "income[.]" [ECF No. 26-6] The order further

10

authorized the Receiver "to immediately enter upon, receive, recover and take complete, entire, and exclusive possession and control over the Receivership Property under further Order of the Court[.]" [ECF No. 26-6]   The Court authorized the Receiver to receive and collect all income from the Receivership Property; to enter into all contracts necessary to continue, maintain, preserve, and protect the Receivership Property; and to assume, reject, and assign contracts. [ECF No. 26-6] The receivership order specifically directed the receivership defendants, including Dwayne Thrasher, to immediately deliver all Receivership Property into the Receiver's possession and prohibited them from "[c]ollecting or attempting to collect income" and from "[i]nterferring in any manner whatsoever with the Receiver in the performance of his responsibilities and duties." [ECF No. 26-6] In subsequent orders, the state court authorized the Receiver to liquidate the receivership estate's equipment and livestock, and ordered the Receiver to "immediately sell all Swine at a market price within the sole discretion of the Receiver."   [ECF Nos. 26 & 38, ¶¶ 15-17; 26-7, 26-8]

Here, CT&T asserts its recommencement of farming operations is evidenced by Dwayne Thrasher loaning CT&T money; expending CT&T assets; and acquiring, managing, and selling CT&T's personal property and real property leaseholds while CT&T was under the receivership and in direct contravention of the state court's receivership orders. CT&T presents no authority in support of its assertion that Dwayne Thrasher had the ability to unilaterally act on CT&T's behalf while CT&T was under the receivership.

Even assuming Dwayne Thrasher was able to recommence CT&T's business operations during the receivership, there is no evidence that CT&T did so. As noted by the NAD Director, there is no evidence that CT&T reimbursed Dwayne Thrasher for any of the expenditures he allegedly made on CT&T's behalf. Further, Dwayne Thrasher stated in the Chapter 12 bankruptcy petition, filed two days after he allegedly purchased swine for CT&T, that CT&T did not own any

11

livestock. [ECF Nos. 26 & 38, ¶ 32-33, Ex. I at 368, 371] Simply stated, CT&T was no longer in the business of farming after the Receiver sold CT&T's swine and other personal property, and terminated CT&T's leases months prior to Dwayne Thrasher's December 2020 CFAP 2 application. The Agency's determination that Dwayne Thrasher, and not CT&T, purchased swine in November 2020 is supported by substantial evidence in the record and is not arbitrary and capricious.

CT&T also fails to support its contention that Dwayne Thrasher's filing of a Chapter 12 Bankruptcy petition on behalf of CT&T automatically vests CT&T with the status of a "family farmer" conducting "farming operations" under the Bankruptcy Code.[5] Again, CT&T fails to account for Dwayne Thrasher's apparent lack of authority to file such a petition when the receivership order granted the Receiver the right to initiate proceedings for CT&T under Chapter 12 of the United States Bankruptcy Code. [ECF No. 26-6] Even absent Dwayne Thrasher's apparent lack of authority to file such a petition, CT&T fails to direct this Court's attention to any finding by the Bankruptcy Court regarding CT&T status as a "family farmer" under the Bankruptcy Code or any authority supporting a finding that the mere filing of a Chapter 12 petition automatically grants a petitioner "family farmer" status.  Accordingly, the Agency's finding that CT&T was not engaged in the business of farming when the December 2020 CFAP 2 application was filed and, therefore, was not a "producer" eligible to receive benefits under CFAP 2 is supported by substantial evidence and is not arbitrary and capricious. The Court grants the Agency's motion for summary judgment [ECF No. 24].

### V.    Conclusion

---

[5] Pursuant to the Bankruptcy Code "[o]nly a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 of this title." 11 U.S.C. §109(f). A "family farmer" is an individual "engage in a farming operation" whose debts do not exceed a certain threshold. 11 U.S.C. §101(18).

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [ECF No. 24] is **GRANTED**.

A separate judgment in accordance with this Order and Memorandum is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of January, 2026